## THOMPSON v. PETTIS.

### PETTIS v. THOMPSON.

Patent Appeal Nos. 2505, 2506.

Court of Customs and Patent Appeals.

Dec. 1, 1930.

William O. Belt, of Chicago, Ill., for Thompson.

Byrnes, Stebbins & Parmelee, of Pittsburgh, Pa. (Earle L. Parmelee and George E. Stebbins, both of Pittsburgh, Pa., of counsel), for Pettis.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an interference case and comes before us on cross-appeals of the parties.

The interference involves certain patents granted to Thompson and an application filed by Pettis, the latter copying into his application sixteen of the various claims which had been patented to Thompson. The interference, as declared, involved sixteen counts. Four of those were eliminated upon a motion to dissolve the interference, and it was reformed, the remaining counts becoming respectively counts numbered 1 to 12, inclusive, which are now before the court. All of the counts relate specifically to molds for making castings, especially brake shoes.

Thompson took testimony, but Pettis did not, and he relies upon the filing of his application in the Patent Office.

Upon final hearing, the examiner of interferences awarded to Thompson priority of invention as to counts 2, 3, 5, and 12, and awarded priority of invention to Pettis as to counts 1, 4, and 6 to 11, inclusive.

Upon cross-appeals from the decision of the Examiner of Interferences, the Board of Appeals affirmed his decision as to counts 3, 5, and 6 to 12, inclusive, and reversed it as to counts 1, 2, and 4, awarding priority of invention to Thompson as to counts 1 and 4, and to Pettis as to count 2.

Thompson appeals from the decision awarding priority of invention to Pettis as to counts 2 and 6 to 11, inclusive, and Pettis appeals from the decision awarding priority of invention to Thompson as to counts 1, 3, 4, 5, and 12.

We will first consider those counts upon which the Board of Appeals and the Examiner of Interferences concurred in awarding priority of invention to the respective parties. These are counts 3, 5, and 6 to 12, inclusive. Of these, as above stated, Thompson was awarded priority as to counts 3, 5, and 12, and Pettis was awarded priority as to counts 6 to 11, inclusive.

The well established rule is that concurring decisions of the Patent Office tribunals upon questions of fact will not be reversed unless manifestly wrong. Pengilly v. Copeland (Cust. & Pat. App.) 40 F.(2d) 995, and cases therein cited.

Count 3 reads as follows: "A mold for casting a brake shoe, and comprising a metal drag and a metal cope having a mold cavity therein, said cope having an opening extending therethrough and communicating with the mold cavity, a sand plug seated in said opening and forming a part of the top wall of the mold cavity, and means carried by the plug and projecting into the mold cavity for securing in place in the cavity the parts to be embedded in the shoe casting."

As to this count, both the Board of Appeals and the Examiner of Interferences found that Thompson was first to conceive and the first to reduce to practice the invention covered thereby. Pettis claims, however, that there is no testimony that Thompson ever reduced to practice that feature of the count calling for "means carried by the plug and projecting into the mold cavity for securing in place in the cavity the parts to be embedded in the shoe casting." Pettis specifically contends that a wire extending through the sand plug referred to in the count, but not supported by it, is not "carried by the plug," and that Thompson's test was of that character.

In view of the rule that claims once granted must be given the broadest interpretation that their terms will reasonably permit, we think that a wire passed through a sand plug, as described by Thompson in his testimony, responds to that part of the count requiring "means carried by the plug."

Counts 5 and 12 each have the same requirement of "means carried by said plug," and what we have said with reference to count 3 upon this point is equally applicable to counts 5 and 12. With this construction of the counts, we cannot say that the findings of the tribunals of the Patent Office awarding priority of invention to Thompson were clearly wrong.

As to counts 6 to 11, inclusive, as to which priority of invention was awarded to Pettis by both the Board of Appeals and the Examiner of Interferences, Thompson contends that Pettis has no right to make the counts, and Pettis contends that there is no testimony that Thompson reduced the invention to practice prior to his (Pettis') filing date, and no testimony establishing that prior to that filing date Thompson was diligent in reducing to practice the invention covered by the counts.

Count 6 is illustrative of this group, and reads as follows: "A mold for making brake shoes and other castings, comprising a metal drag member and a metal cope member and having a mold cavity therein, a refractory section seated in one of said members and having a face thereof forming a wall surface of the mold cavity, and a rib formed integrally with the metal of said member and disposed at the parting line of said member to protect an edge of said face forming a wall surface of the mold cavity."

As to Thompson's contention that Pettis has no right to make the counts, we find no error in the holding of the Patent Office tribunals to the contrary. We think the words "parting line" are descriptive of the construction shown by Pettis' disclosure as well as that shown by Thompson.

As to lack of diligence in reducing to practice the inventions covered by counts 6 to 11, inclusive, we agree with the tribunals of the Patent Office that the testimony shows that Thompson did not reduce the invention to practice until after the date on which Pettis filed his application, and that there is no evidence that Thompson was diligent in reducing his invention to practice at the time that Pettis entered the field, which, for the purposes of this case, was his filing date, April 19, 1923.

Thompson contends that the Board of Appeals made an error of law in its decision wherein it stated that " * * * the elapsed time between the conception of Thompson of February 19, 1923, and the reduction to practice in October, 1923, indicates lack of diligence on the part of Thompson." The mistake of law complained of is the implied holding that Thompson was chargeable with diligence from February 19, 1923, to the date of his reduction to practice, whereas, as a matter of law, he was chargeable with diligence only from immediately prior to the time of Pettis' entry into the field, April 19, 1923, and continuing thereafter to reduction to practice, actual or constructive. This contention is well founded, for the law is well settled that, where one is the first to conceive, but the last to reduce to practice, he is chargeable with diligence only from immediately prior to the time the subsequent inventor entered the field. Beidler v. Caps (Cust. & Pat. App.) 36 F.(2d) 122.

So here, if Thompson was, immediately prior to April 19, 1923, the date of Pettis' entry into the field, exercising diligence in reducing the invention or inventions covered by counts 6 to 11, inclusive, to practice, and was reasonably diligent thereafter until his actual reduction to practice, he is entitled to prevail, even though he may not have been diligent between the date of his conception and immediately prior to Pettis' entry into the field on April 19, 1923.

An examination of the record, however, discloses that there is no testimony showing diligence upon the part of Thompson, with regard to the invention covered by these counts, until a considerable time after Pettis' filing date.

For the reasons stated, we must affirm the decision of the Board as to counts 6 to 11, inclusive.

There is left for consideration counts 1 and 4, in which priority of invention was awarded to Thompson, and count 2, in which priority of invention was awarded to Pettis, the decision of the Examiner of Interferences being reversed by the Board as to each of said counts 1, 2, and 4.

Count 1 reads as follows: "A permanent mold for making castings, and comprising a metal drag and a metal cope with a mold cavity formed therein, the cope having an opening communicating with the mold cavity, a sand plug seated in said opening and forming a part of the top wall of the mold cavity, and sections of refractory material seated in the drag and in the cope and forming the remaining parts of the walls of the mold cavity."

With reference to this count, the Board of Appeals said: "This count is claim 1 of Thompson's patent No. 1,484,422. The specification of this patent, page 1, lines 56–92 fully and clearly describes "sections of refractory material" which are suitably set in the metal drag and metal cope. These sections may be made up of several parts and closely fitted or cemented together."

The specification, page 2, lines 9–18, says: "Instead of employing the refractory sections 14, 17, 18 as shown in Figs. 1 and 2, I may provide the walls of the mold cavity in the metal drag and cope with a coating of refractory material in sections 29, 30 and 31, so that all those portions of the mold cavity walls formed by the sections 14, 17 and 18 in Figs. 1 and 2 are formed by the coating sections 29, 30 and 31 in Figs. 3 and 4."

We think the decision of the Examiner of Interferences on page 6, lines 13–17, as follows: "It is believed that this coating of refractory material, about which there is an abundance of testimony, does not meet the terms of the counts above referred to and that this coating is not a 'refractory section' and cannot be so construed," is wrong when the term "refractory section" is construed in the light of Thompson's specification from which the count is taken. The Examiner has given the term a more limited meaning than warranted by the specification. The claim, we assume, was clearly intended to read upon figures 3 and 4 of the patent as well as upon figures 1 and 2, and we think this assumption is warranted by our quotation above from page 2, lines 9–18 of the patent. If we are right in our assumption, the refractory washes over the portions of the walls of the mold cavity made in the molds from which castings were made on February 19, 1923, constitute a reduction to practice of "sections of refractory material seated in the drag and in the cope and forming the remaining parts of the walls of the mold cavity." This last above quotation from count 1 is additional to what was included in count 3 which the Examiner of Interferences held that Thompson was the first to conceive and the first to reduce to practice. Thompson was the first to reduce count 1 to practice.

We think that, in the language quoted, the Board has correctly construed the count in question, and we agree with its conclusions.

Count 4 reads as follows: "A permanent mold for making castings, comprising a drag and a cope having a mold cavity therein, said cope having spaced openings communicating with said cavity, porous cores in said openings, and means embedded in said cores and projecting into said cavity for suspending a member in the mold cavity to be embedded in the casting."

As to this count the Board said:

"Count 4 calls for—

" 'Said cope having spaced openings communicating with said cavity, porous cores in said openings.'

"This count is claim 2 of Thompson's patent No. 1,484,429, the specification of which on page 1, lines 77–78, says: 'The porous cores permit the escape of gases from the mold cavity.' Pettis shows and describes

"The wire 90 in the present embodiment is embedded in the core 80. The wire 91 is similarly embedded in a sand core 91' in a

cavity 92 provided for the purpose in one of the blocks G. This cavity 92 preferably communicates with one of the openings 29' in the cope wall.

"There is no description of porous cores in the Pettis specification and there would be no necessity for making the cores porous if the spaces between the blocks G serve the purpose stated, page 5, lines 11–15, of venting of the gases. We think Pettis has no right to make the count and priority should therefore be awarded to Thompson."

We think that the board has correctly disposed of this count. Thompson's specification shows spaced openings in the cope communicating with the cavity of the mold, with porous cores in said openings. His specification recites that "The porous cores permit the escape of gases from the mold cavity." There is no description of porous cores in the Pettis specification, but there is a statement therein to the effect that certain cores described may be made either of burnt sand or green sand, and the Law Examiner, upon the motion to dissolve the interference, held that, as it is well known in the casting art that dry or burnt sand is porous, the disclosure in Pettis' specification entitled him to make the count in question. The Board of Appeals, however, held otherwise, upon the ground that there is found no description of porous cores in Pettis' specification, and that with his structure there would be no necessity or occasion for making the cores porous. Thompson's specification calls for porous cores for a specific purpose, viz., the venting of the gases. Pettis provides an entirely different method of venting gases, in which sand plugs play no part whatever. The mere fact that he states that a sand core is used in the cavity 92 does not entitle him to make the count when it appears that the sand used for the core serves no purpose in being porous, but is merely a convenient material, whereas a nonporous material would serve his purpose quite as well if one could be found as easily manipulated as is sand. Furthermore, Pettis' specification does not specify a sand core in an opening described therein, but only a sand core in a cavity which "preferably communicates with one of the openings 29' in the cope wall." From this it is clear that the cavity referred to did not in itself constitute an opening, and the use of the word "preferably" clearly shows that Pettis did not consider it essential that the cavity communicate with an opening at all.

We do not think that, with Pettis' structure, and his method of providing vents for gases, his use of sand for his core would alone be an infringement of Thompson's patent providing for "porous cores in said openings." We agree with the Board that priority of invention upon count 4 must be awarded to Thompson because Pettis has no right to make the count.

As to count 2, the Board of Appeals reversed the Examiner of Interferences and awarded priority of invention to Pettis. The count reads as follows: "A mold for casting a brake shoe, and comprising a metal drag and a metal cope having a mold cavity therein, said cope having an opening extending therethrough and communicating with the mold cavity, a sand plug seated in said opening, and means embedded in the plug and projecting into the mold cavity for securing in place in the cavity the parts to be embedded in the shoe casting."

The question here involved is whether Thompson was the first to conceive and reduce to practice the invention covered by the count, and the particular point is upon the construction to be given the word "embedded" in the count.

The testimony shows that the wires of Thompson's structure in his claimed reduction to practice extended through the sand plug, a hole having been previously provided for that purpose. The Board of Appeals held that the wire so passing through the sand plug was not embedded in the core as required by the count. We agree with the Board that a means loosely passing through a substance or an article is not embedded in it. The means may be said to be carried by the substance or article, but not embedded in it.

We find no error in the decision of the Board of Appeals of the Patent Office and it is therefore affirmed in all respects.

Affirmed.