## ATHERTON v. PAYNE.

Patent Appeal No. 2818.

Court of Customs and Patent Appeals.
Jan. 25, 1932.

. BLAND and LENROOT, Associate Judges, dissenting.

Samuel E. Fouts, of Los Angeles, Cal. (J. T. Newton, of Washington, D. C., of counsel), for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which Atherton has appealed to this court from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of invention of the subject-matter to Payne.

The subject-matter relates to certain features of a "Remote Control Valve" designed primarily for use in the fuel pipe which leads to a heating furnace; electric means being provided to open the valve for permitting fuel, such as gas, to flow through the pipe, or to close the valve and stop the fuel flow. The electric circuit for so controlling the valve, it is stated, generally leads to some room or rooms remote from the furnace and the valve.

Atherton was granted a patent, No. 1,617,094, issued February 8, 1927, upon an application filed June 27, 1924, during the pendency of an application by Payne, serial No. 513,204, filed November 5, 1921.

Following the issuance of the patent to Atherton, Payne, on January 16, 1928, copied claim 1 of the patent for the purpose of bringing about an interference. Such interference was duly declared by the Examiner on February 15, 1928.

The count reads as follows: "A remote control valve comprising in combination a valve adapted for continuous rotation in one direction, an operating stem connected to the valve to rotate therewith, contact pins on the stem, brushes supported adjacent the stem to form an electric circuit by contact with the pins, electrical means to rotate the valve step by step and cause the pins to make and break an electric circuit at various positions of the valve."

Atherton moved to dissolve the interference upon the ground that Payne "has no right to make the count. * * *"

This motion was denied by the Law Examiner to whom it was referred, whereupon the Examiner of Interferences, no proofs having been taken, rendered his decision awarding priority to Payne who, by reason of his prior filing date, is the senior party.

So we have before us as the primary issue to be determined, the ancillary question of Payne's right to make the claim.

The elements of the count are (a) "a valve adapted for continuous rotation in one direction"; (b) "an operating stem connected to the valve to rotate therewith"; (c) "contact pins on the stem"; (d) "brushes supported adjacent the stem to form an electric circuit by contact with the pins"; and (e) "electrical means to rotate the valve step by step. * * *"

These elements are all present in Atherton, being disclosed in the drawings, as indicated by numerals, and the function of each member so indicated is specifically described in the specification. Thus the element (a) is a cylindrical member numbered 13 in the drawings; element (b) is numbered 15 and is referred to in the specification as "an operating stem"; of element (c) the specification says "a contact pin 36 is fixed in the stem 15 and extends radially [and] a similar contact pin 37 is fixed in the stem 15 and extends radially and diametrically opposite the pin 36 and is spaced longitudinally from the plane of the pin 36"; element (d) consists of "insulated spring brushes 38 and 39"; and element (e) comprises "a solenoid or plunger electromagnet" and means to connect it with the valve through a pawl.

Elements (a), (d), and (e) are conceded to be present in Payne, but, in behalf of Atherton, it is insisted that Payne does not disclose either element (b), "an operating stem," etc., or element (c), "contact pins on the stem."

The Board of Appeals held, in effect, that a certain shaft (numbered 24) in Payne's drawing is driven from a wheel (numbered 32) through screws (numbered 33), and that one of the figures demonstrates that the drive is also through a key (numbered 25), and said:

"* * * In the construction of each party all three parts, that is, the valve, the operating disk or wheel and the projecting stem which carries the contact members are rigidly united to form a unitary member. We see no patentable difference in the constructions and deem the claim in this respect

readable on the Payne construction whether the shaft 24 alone or said shaft and the surrounding boss on the valve be regarded as the stem. * * *"

Upon the "contact pins" element, the Board said:

"An additional reason assigned by Atherton for denying the claim to Payne is that Payne does not have contact pins on the stem. No reason is seen for not regarding the rivets 71 as such contact pins. It is true they are not radial pins extending directly from the shaft as in the Atherton construction but the language of the claim is clearly broad enough to include pins indirectly supported on the stem as in the Payne construction."

Appellant's brief says:

"* * * It is true that there is a 'shaft 24' extending through the ratchet wheel and valve and that these parts are connected to rotate together, as by means of a key 25; but, so far as concerns the operation of the valve, the shaft and key might be omitted. The said shaft is not an 'operating stem' under any fair interpretation of the issue. It is merely a means for holding the parts together. * * *

"It is an abuse of language to call the Payne 'shaft 24' an operating stem for the valve. It is not a valve stem; and if it could properly be so called, *it is not an operating stem.* * * * The issue therefore calls for a stem which *operates the valve.*" (Italics quoted.)

Appellant further argues that, even if the shaft itself, or the member built up by treating the shaft and the surrounding boss on the valve as a unitary member, be held to be an operating valve stem, "then there clearly are no pins on the stem," because the rivets 71 held by the Board of Appeals to be contact points are not located *"on the* stem" by Payne, and "the only reasonable interpretation of the issue locates the contacts *on the* stem." (Italics quoted.)

■ These contentions of appellant as to the mechanical differences appear to be correct. So apparently the conclusions of the tribunals of the Patent Office were reached by applying the rule that the counts of an interference are to be given the broadest interpretation which their terminology will permit.

Appellant argues that this rule of broad interpretation may not properly be applied in a case such as that at bar; that the interference is between a *patent* and an *application,* not between two applications, and therefore, the count being taken from the patent, its terms must be given the limited meaning which they had in the patent, and the limitations as expressed in the claim which became the count are material, and may not be ignored in an interference proceeding, whatever may be the rule in infringement and ex parte cases.

Under the facts of this case we think it unnecessary to its determination for us to discuss the arguments made and authorities cited relating to the rules of law applicable in interference contests between a patent and an application on the one hand, and between two applications on the other, nor do we regard it necessary here to discuss ambiguity or equivalency.

The count has specific limitations as recited, supra, two of which, (b) "an operating stem connected with the valve to rotate therewith," and (c) "contact pins on the stem," are in issue. Expressly defined limitations we may not disregard. In re Bijur, 40 F. (2d) 999, 17 C. C. P. A. 1134; Thompson v. Pettis, 44 F.(2d) 420, 18 C. C. P. A. 755.

Assuming without deciding that the Board of Appeals was correct in holding that the Payne structure discloses a part which meets the requirement of the court as to an "operating stem," we are unable to agree that Payne's rivets meet the limitation called for by Atherton's "contact pins on the stem." Payne's rivets are not on the part held by the Board to be an operating stem.

In Thompson v. Pettis, supra, we held, as stated in the syllabus:

"A wire extending through an opening previously made in a sand plug filling an opening in a mold part and loosely passing therethrough, is not a means 'embedded in the plug.' "

In Field v. Stow, 49 F.(2d) 1072, 18 C. C. P. A. 1502, where a count relating to a mine car called for "a floor supported on * * * sill flanges" and it was insisted that "supported on" was synonymous with "supported by," a view apparently taken by the tribunals of the Patent Office, we said:

"We are unable to agree with the conclusion reached by the Patent Office tribunals.

"Appellant had the right to expressly limit his patent claim, as he did, to a floor supported *on* sill flanges.

824

"The language 'a floor supported on sill flanges,' in our opinion, means a floor in contact with the upper surfaces of the sill flanges. Had the count defined a floor supported *by* sill flanges, it would have been sufficiently comprehensive to cover a floor in contact with either the upper or the lower surfaces of the flanges."

Since Atherton expressly limited his claim to contact points *on* the stem and Payne's disclosure does not read upon the limitation, it follows that, in our opinion, Payne may not make the claim which constitutes the count in issue.

The decision of the Board of Appeals is therefore reversed.

Reversed.

BLAND and LENROOT, Associate Judges, dissent.