## HY–LO UNIT & METAL PRODUCTS CO.
### v. REMOTE CONTROL MFG.
#### CO., Inc.
#### No. 7833.

Circuit Court of Appeals, Ninth Circuit.
April 13, 1936.

Miller & Boyken, A. W. Boyken, and Carroll A. Gordon, all of San Francisco, Cal. (Samuel E. Fouts, of Los Angeles, Cal., of counsel), for appellant.

William L. Connor, of Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

Appellant is the owner of patent No. 1,617,094, issued to it as assignee of Charles Atherton in February, 1927, for a remote control gas valve to be operated in connection with a heating furnace. It brought this action against the appellee for the infringement of that patent.

Appellee admits that the device manufactured by it would infringe the patent if valid, but denies the validity of the patent on the ground that the same was anticipated by an invention by one El Roy L. Payne. Payne had applied for a patent on his invention before Atherton had applied for the patent in question, but the latter patent was issued by inadvertence. Later interference proceedings were instituted which ultimately resulted in the decision by the Court of Customs and Patent Appeals, Atherton v. Payne, 54 F.(2d) 821, hereinafter referred to. The trial of the issues was referred to a master, and subsequent to such reference the appellant sought to file a supplemental complaint alleging that the appellee was estopped to assert the invalidity of the Atherton patent upon the ground that the appellee was in privity with the defendant in a prior infringement suit instituted by appellee against the Potter Radiator Corporation. The application was denied, and the denial of the application is assigned as error.

The first question to be considered is whether or not under the doctrine of equivalence the combination claimed in the Atherton patent is the same as that covered in the Payne application, hereinafter referred to as the Payne patent. It is not questioned but that the Payne invention accomplished the same general result as the Atherton patent. Every element in the

Atherton patent as disclosed by the claims in issue is found in the Payne invention if it appears, as appellee contends, that certain elements in the Atherton combination are merely the equivalents of corresponding elements of the Payne combination. We will deal first with the Payne patent because that invention is prior in point of time.

The Payne combination involves a gas valve mounted on a shaft in a valve casing and capable of continuous rotation, which opens to admit predetermined quantities of gas to the heater at each stage of its rotation, as follows: Upon rotation of the valve, different numbers of port openings in it come into apposition with corresponding numbers of inlet and outlet openings in the valve seat and casing connecting with the gas supply pipe. Rotation of the valve is accomplished by means of a solenoid magnet having a core pivotally connected with a lever. The lever has a pawl on its other end connected pivotally to it and positioned so as to engage a ratchet wheel connected with the valve and valve shaft. When the solenoid is energized by an electric current the core plunges into it, pulling the lever and pawl forward, and the latter engaging the ratchet wheel rotates the valve. The core and the lever and pawl attached thereto are returned to their original position by a spring when released by the magnet. Thus each operation of the plunger moves the ratchet wheel and valve through the arc of the circle occupied by the tooth of the ratchet wheel. The position of the ratchet wheel and valve is indicated by lights of different color located at the switchboard established for remote control. The different lighting circuits to the respective lights are closed by the contact of metal pins with contact arms. The metal pins project through an insulated disc which is mounted on the shaft of the valve and rotates with the valve. The contact arms are mounted adjacent to the disc. Rotation of the disc brings different metal pins into contact with different contact arms; thus closing the different light circuits and indicating to the operator the position of the valve and the amount of gas flowing through it.

Claims 1, 2, and 3 of the Atherton patent, in issue in this case, are as follows:

"1. A remote control valve comprising in combination a valve adapted for continuous rotation in one direction, an operating stem connected to the valve to rotate therewith, contact pins on the stem, brushes supported adjacent the stem to form an electric circuit by contact with the pins, electrical means to rotate the valve step by step and cause the pins to make and break an electric circuit at various positions of the valve.

"2. A remote control valve comprising in combination a valve fitting having a rotary cylindrical valve plug mounted therein, a web in the fitting surrounding the plug and having ports therethrough to form an inlet and outlet side, ports in the plug adapted to register with the ports in the web, a stem forming an extension of the valve plug, contact pins attached to the stem, electric brushes positioned adjacent the stem and means to rotate the valve plug and stem step by step—to open and close various ports in succession and to make and break an electric circuit between the brushes and the said pins.

"3. A remote control valve comprising in combination a valve fitting, a box secured thereto, a rotary valve mounted in the fitting and having ports therethrough, webs in the fitting on each side of the valve plug having ports therethrough, a stem attached to the plug and rotatably mounted in the box, a series of pins secured to the stem, electrical brushes mounted in the box, electrical means positioned in the box having an operative connection with the stem to rotate the stem and the plug step by step in a continuous rotary direction, opening and closing the various ports in succession and causing the pins to make and break electric circuits with the brushes."

The appellant claims that there are differences between the drawings and specifications of the Atherton patent and those of the Payne application. But these differences in the Atherton patent are immaterial unless they are parts of the claimed combination. For illustration, the appellant claims that drawings of the Payne patent show that the transformer in his patented device is so arranged as to increase the voltage over that of the house circuit while a similar drawing of the Atherton patent shows a decrease in voltage. No point is made upon this difference in the Atherton claims nor is the point mentioned in the Payne claims. The point arises solely from an interpretation of the drawings which apparently in the Payne patent were not in accordance with the actual construction which Payne had made and put in use. The same is true with

reference to the difference pointed out by appellant concerning the stop arm on the lever of his invention to avoid "forward spinning of the valve beyond proper position," whereas appellant contends that in the Payne invention improper movement is prevented only by frictional engagement between the valve and its seat. However, it may be pointed out that an inspection of the Payne patent discloses that Payne does not rely entirely upon "frictional engagement," for, "to prevent overthrow of the valve by quick action of the lever," a block is adjustably mounted upon a rod which is pivotally secured to the lever so as to be moved into and out of the notches of the ratchet wheel during oscillatory movement of the lever. This is a mechanical equivalent of the stop arm extending from the lever to engage pins and hold the valve from spinning employed in the Atherton invention.

The main difference claimed by the appellant between the two combinations arises from the use in the Atherton patent of the contact points, used to close the signal light circuits, attached directly to the stem of the valve, whereas in the Payne patent the contact points are located on an insulated disc attached to the stem. By placing his contact points directly on the stem, Atherton closes his light circuits by grounding them through the stem on the metal valve box, while Payne uses an extra contact arm and piece of wire to close his circuits. It is clear that contact points consisting of pins attached to a stem and contact points consisting of small brass discs projecting through insulating substance attached to a stem are equivalent. Furthermore, the mere substitution of the stem and part of the iron of the container in the Atherton patent for an extra contact arm and a segment of wire in the circuits of the Payne patent is the substitution of equivalents.

Another difference much emphasized by appellant is the fact that in the Payne patent the ratchet wheel is attached directly to the valve, while in the Atherton patent the wheel corresponding to the ratchet wheel in the Payne patent is only attached to the stem. This difference amounts to only a variation in the mechanical construction of equivalents, although the advantages claimed for it are discussed in great detail in the briefs. The ratchet wheel in the Payne patent, besides being attached directly to the valve, is also secured to the shaft or stem as in the Atherton patent. In both inventions the valve wheel and stem rotate together as integral parts.

The principal difference between the structure disclosed in the patent application of Payne and that of Atherton is the use of a disc instead of a cylinder, but a disc is a cylinder, the thickness of the disc being the altitude. Thus considered, the difference between the two structures is that Payne has the contact points on the end of his cylinder instead of on the circumference insulated from the cylinder by means of some insulating material, while on the cylinder of the Atherton patent the insulation is accomplished by means of air. In the Payne patent the openings for the passage of gas are parallel with the axis of the cylinder or disc, whereas in the Atherton patent the openings are at right angles with the axis. Similarly the contact pins in one case are parallel with the axis and the other perpendicular to it.

We conclude, then, that the several elements of the combinations in the Atherton and Payne invention are the same, and operate in substantially the same way to produce the same result. Consequently the Atherton patent was anticipated by the prior Payne invention.

The next question involved in this suit is whether the Atherton patent constitutes a patentable improvement over the Payne patent, because, if so, appellee is an infringer, for it claims no right either to the Payne patent or any patentable improvements Atherton may have developed, but defends on the ground that appellant's patent is invalid because it is anticipated by Payne and discloses no invention over Payne. This question likewise should be developed from the standpoint of the claims of the Atherton patent because anything disclosed by the application and not claimed is dedicated to the public. Ely Norris Safe Co. v. Mosler Safe Co. (C.C.A.) 62 F.(2d) 524; Gladding-McBean Corporation v. N. Clark & Sons (C.C.A.) 16 F.(2d) 50; Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co. (C.C.A.) 1 F.(2d) 673. There is no patentable improvement over Payne's invention shown in the Atherton patent by the placing of the contact pins for the lighting circuits directly on the valve stem instead of on a disc, or in the failure to connect the wheel which rotates the stem and valve directly to the valve as well as to the stem, nor in the substitution

of a cylinder for a disc. However, we do not intend to say that there may not be cases in which these differences would be patentable improvements, particularly in view of the decision of the Supreme Court in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

In connection with the question of whether appellant's invention as disclosed by his claims presented patentable differences over the Payne patent, it should be noted that the master found that, in substituting the cylindrical valve of Atherton for the disc valve of Payne, "an old valve construction was substituted," as "there is no material difference between the Atherton valve and the prior art valves of Cogswell, Vogel and Lester except that the latter valves have tapered sides while Atherton uses a straight side valve." In his brief appellant, however, emphasizes the advantages derived from substituting the valve composed of a cylinder in lieu of the frustrum of a cone. But the cylinder is a cone with the apex as at infinity. A different degree of taper in a cone could hardly be considered an invention over the prior art. In any event, there is no patentable difference between the disc valve of the Payne patent and the cylindrical valve of the Atherton patent.

We now come to a consideration of the interference proceedings in the Patent Office and before the Court of Customs and Patent Appeals. Atherton v. Payne, supra. The appellant contends that this decision is very persuasive in a determination of the validity of the Atherton patent as affected by the Payne patent. In determining the effect of this proceeding it should be noted that, at the time the interference was declared, the Atherton patent had already issued, and that the Patent Office had no jurisdiction to cancel it. Payne brought about the interference proceeding by reframing his claim No. 1 so that it was expressed in the same language as claim No. 1 of the Atherton patent. It was decided that Payne could not make the claim in issue. It appears, however, that the only question involved before the Court of Customs and Patent Appeals was the question of the priority of details involved in the Atherton claims which Atherton contended Payne did not show in either the specifications or drawings of his application. On this question that court held that "expressly defined limitations" in a claim may not

be disregarded, and that, as "Atherton expressly limited his claim to contact pins on the stem," and as "Payne's disclosure" did "not read upon the limitation," Payne could not make the claim. The question of whether or not the two patents covered the same ground by use of equivalents in one for the same elements in the other, or whether or not Atherton's valve involved invention and, consequently, a patentable difference over the Payne invention, was not considered. Thus it left the question of infringement to be determined by courts having jurisdiction of such a question. The master in the court below so construed the interference proceedings, this construction was adopted by the trial judge, and we are in accord with their conclusion.

█ It remains to consider the ruling of the trial court upon the application for leave to file the supplemental complaint.

Appellant contends that the trial judge, in refusing to allow it to file the supplemental bill, "either failed to exercise * * * discretion or unwittingly abused it." The allegations contained in the supplemental bill are in substance that, in a suit prosecuted by appellant against the Potter Radiator Corporation involving the infringement of the same patent involved in the case at bar, by valves substantially identical with the valves alleged to be infringements of the patent in suit, and involving the same issues presented in the present suit, the appellee openly "joined and cooperated with Potter Radiator Corporation in the defense of said suit by employing and paying counsel to conduct and who did conduct the defense thereof, by paying jointly with Potter Radiator Corporation and others the costs of such defense," and thereby became privy to the Potter Radiator Corporation and bound by the decision in that case.

From the affidavits in support of the application to file the supplemental bill it appears that the appellant in 1927 brought a suit against a number of defendants for the infringement of its patent, including the Potter Corporation and the present appellee as joint defendants; that, to defend this suit, the defendants joined in the expense of employing an attorney; that this suit was subsequently dismissed and the defendants in the joint suits were sued separately in a series of suits; that in these separate suits all of the defendants, save one, were represented by the same counsel and the Potter Radiator Corporation and

the present appellee were represented by these counsel; that during the trial of the action brought by the appellant against the Potter Radiator Corporation no officers of that company were present, but that Mr. Samuel Rowland, president and manager of the appellee company, and Judge George W. Somerville, stockholder of appellee company, were present and conferred with the counsel during said trial. It further appears from the affidavits that the appellee company defrayed part of the cost of the defense of that action.

Even if we assume as true the allegations contained in the supplemental bill and the statements in the affidavits, there was obviously no privity shown between the parties in the strict sense of the term. In Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 643, 56 L.Ed. 1009, Ann.Cas.1913E, 875, Mr. Justice Lurton, speaking for the Supreme Court, said: "What is privity? As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property."

Nor is appellee bound by the prior decision in the action brought by the appellant against the Potter Radiator Corporation, even though it be assumed, as alleged, that it participated in the defense of that action and defrayed part of the expense of defending it.

In Litchfield v. Crane, 123 U.S. 549, 8 S.Ct. 210, 31 L.Ed. 199, the Supreme Court had before it the question of whether the defendant in that case could plead as res judicata a decision in which the plaintiff had in a former suit, prosecuted to quiet title to certain land or recover taxes paid on the land in the event its title was defective, received an adverse decision on both issues. In the prior case the defendant had not been made a defendant, although her lands had been described in the bill. But, as the title to the defendant's lands was subject to the same defects as was the title of the defendant's in the former suit, she was interested in seeing a decision adverse to the plaintiff's reached in the former suit and defrayed part of the expense of the defense of that suit. Mr. Justice Waite, speaking for the court in that case, said: "The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the adjudication relied on was had. * * * She interested herself in securing a favorable decision of the questions involved, as far as they were applicable to her own interests, and paid part of the expenses; but there was nothing to bind her by the decision. If it had been adverse to her interest, no decree could have been entered against her personally. * * * She was indirectly interested in the result, but not directly. * * * Mrs. Litchfield had no right to make a defense in her own name, neither could she control the proceedings, nor appeal from the decree. She could not, in her own right, adduce testimony or cross-examine witnesses. Neither was she identified in interest with any one who was a party. * * * She was neither a party to the suit, nor in privity with those who were parties; consequently she was in law a stranger to the proceedings, and in no way bound thereby."

This decision was approved by the Supreme Court in Bigelow v. Old Dominion Copper Mining & Smelting Co., supra, and Rumford Chemical Works v. Hygienic Chemical Co. of New Jersey (Hygienic Chemical Co. of New York v. Rumford Chemical Works), 215 U.S. 156, 30 S.Ct. 45, 46, 54 L.Ed. 137. The latter case involved two suits brought by the Rumford Chemical Works claiming infringement of a patent owned by that company. The only evidence showing infringement was testimony of one Clotworthy given in a previous "test" case prosecuted by the Rumford Chemical Works v. New York Baking Powder Co. (C.C.A.) 134 F. 385, establishing the patent. Rumford being dead, in order that his evidence given in the former case could be admitted, it was necessary to establish privity between the defendants and the New York Baking Powder Company. The evidence to establish privity was that the defendants had contributed financially to the defense of the former case. Mr. Justice Holmes delivered the opinion of the court in that case, and in discussing the question of privity said: "We may reject as extravagant the suggestion that the contribution may have been made from charitable motives, and assume that it was induced by reasons of business and indirect interest; but it was not shown that, as between the present and former defendants, either Hygienic Company had the right to intermeddle in any way in the conduct of the case. The Hygienic Companies would have been glad to see the Rumford patent declared void, and were willing to pay something to that end. That

349

was all, and that did not make them privies." In Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 642, 56 L.Ed. 1009, Ann. Cas.1913E, 875, supra, upon the question of estoppel by judgment, the court said: "To conclude Bigelow by the New York judgment, it must appear that he was either a party or a privy. That he was not a party to the record is conceded. He had no legal right to defend or control the proceedings, nor to appeal from the decree. * * * That he was indirectly interested in the result because the question there litigated was one which might affect his own liability as a judicial precedent in a subsequent suit against him upon the same cause of action is true, but the effect of a judgment against Lewisohn as a precedent is not that of res judicata. * * * Nor would assistance in the defense of the suit, because of interest in the decision as a judicial precedent which might influence the decision in his own case, create an estoppel as to Bigelow." Citing, Stryker v. Goodnow's Adm'r, 123 U.S. 527, 8 S.Ct. 203, 31 L.Ed. 194, and Rumford Chemical Works v. Hygienic Chemical Co., supra.

■ These decisions by the Supreme Court establish the proposition that, in order for a person not formally made a party to a suit to be estopped by the decision therein, he must either be in privity with a party thereto in the strict sense of the term or he must not only aid in the prosecution or defense of a suit, but have the right to participate and control such prosecution or defense. Neither in the supplemental bill or the affidavits are there any facts alleged showing a right of the appellee to participate in and conduct the defense of the action prosecuted by appellant against the Potter Radiator Corporation or any interest of appellee in the subject-matter of that suit. It was not alleged in the supplemental bill nor shown in the affidavits that appellee had agreed with the Potter Radiator Corporation to participate and exercise joint control over the defense of the individual suit prosecuted by the appellant against that company or had agreed with appellant to be bound by the judgment in that suit. Consequently, appellee was a stranger to the suit. It follows that the trial judge did not err in refusing to allow appellant to file its supplemental bill.

The decision by this court in Carson Investment Co. v. Anaconda Copper Mining Co., 26 F.(2d) 651, 657, relied upon by appellant, is in accord with the decisions of the Supreme Court above cited. In that case we said: "We agree with appellee in the contention that the judgment could not be relied upon as an estoppel merely because the Anaconda Copper Company contributed some money toward the defense of the American Smelting & Refining Company suit, gathering testimony for the defense; but that does not meet the broader proposition that if the Anaconda Company directed its counsel to confer with counsel for the American Smelting & Refining Company, and if such counsel participated in the preparation of the case for trial and in the trial of the issues, and if the Anaconda Company had the right to exercise joint control over the litigation, and did actually co-operate with the American Smelting & Refining Company in the trial and appellate courts * * * it became privy to the American Smelting & Refining Company suit." Consequently it was held erroneous to exclude evidence of an agreement between the two companies to conduct a joint defense of the action brought against the American Smelting & Refining Company. See, also, General Elec. Co. v. Morgan-Gardner Elec. Co. (C.C.A.) 168 F. 52; Hauke v. Cooper (C.C.A.) 108 F. 922. Upon the general subject, see Greenleaf on Evidence (16th Ed.) § 523, p. 656, § 535, p. 664; Black on Judgments (2d Ed.) § 540, p. 819.

In view of our conclusion, it is unnecessary to consider the appellee's cross-appeal.

Decree affirmed.