## E. I. DU PONT DE NEMOURS & CO. v. SYLVANIA INDUSTRIAL CORPORATION.

### No. 4813.

Circuit Court of Appeals, Fourth Circuit.

Aug. 16, 1941.

Hugh M. Morris, of Wilmington, Del. (J. Gordon Bohannan, of Petersburg, Va., on the brief), for appellant.

C. O'Conor Goolrick, of Fredericksburg, Va., and Ellis W. Leavenworth, of New York City (Leslie D. Taggart, of New York City, on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The validity of the word "cellophane" as a trade-mark indicating a kind of wrapping material manufactured by E. I. duPont de Nemours and Company, a Delaware corporation, is the subject matter of this suit in which Sylvania Industrial Corporation, a Virginia corporation, is charged with infringement and unfair competition. In answer to the bill of complaint Sylvania denied infringement and averred affirmatively that "cellophane" is not a trademark, but is a generic and descriptive name used by the public and the trade to indicate a kind of product manufactured both by plaintiff and by defendant. Going further, Sylvania averred that the character of "cellophane" as the descriptive name of a product was adjudicated in DuPont Cellophane Co., Inc. v. Waxed Products Co., Inc., 2 Cir., 85 F.2d 75, certiorari denied, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443, 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539, 305 U.S. 672, 59 S.Ct. 227, 83 L.Ed. 436, in which case the plaintiff in the instant case, as successor to a wholly owned subsidiary, was plaintiff, and Waxed Products Company, Inc., a customer of Sylvania, was defendant; and that Sylvania, being interested in the suit, employed counsel and defended the suit on behalf of its customer openly and to the knowledge of the plaintiff and the court.

Upon these pleadings in the instant case, Sylvania moved in the District Court for summary judgment dismissing the complaint, in accordance with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. This motion came on for hearing upon the pleadings and certain affidavits and other documents filed by the parties. The District Judge, being of opinion that the plaintiff was estopped from maintaining the action by the final judgment adverse to DuPont in the prior case, granted the motion and dismissed the suit. The propriety of this ruling is the only question on this appeal. That question involves the determination of (1) the basis of the court's decision in the prior case, and (2) Sylvania's connection therewith.

In connection with the motion for summary judgment, the following facts with reference to the use of the term "cellophane" by Sylvania and its customers were established: DuPont and Sylvania are the only manufacturers of the product in this country. Prior to the end of 1936, Sylvania, in contracting with its customers, described the goods as "transparent cellulose wrapping paper". Sylvania first used the term "cellophane" in its advertisements in December, 1936, and first used it on its goods in November, 1937. These uses were subsequent to the decision of the trial court in the prior case on May 11, 1934, and the decision of the appellate court therein on July 17, 1936; but Sylvania filled customers' orders for cellophane with its own product from 1930 until 1933. Sylvania did not encourage the use of the word by the public, and uniformly advised its customers to avoid its use. The Waxed Products Company, defendant in the prior case, did not use the word on its goods or in its advertisements, but supplied customers who asked for cellophane with material made by Sylvania.

The following facts were shown with regard to Sylvania's connection with the Waxed Products Company's case. Sylvania petitioned the trial court therein for leave to intervene on the ground that the word "cellophane" was a descriptive name for its product, and that its customers could not sell it successfully without filling orders for cellophane, and hence Sylvania had a substantial interest in the outcome of the case. The District Judge held that this motion should be denied as a matter of discretion, unless Sylvania would stipulate to be bound in all respects by the final decree. Sylvania was unwilling to make this stipulation, and intervention was therefore denied. But counsel who appeared for Waxed Products Company said in his opening statement that although Sylvania was not willing to face the eventu-

alities of the required stipulation, it did come into the case to take care of the defendant. Prior to the examination of the witnesses, counsel for the defendant, in reply to a question from counsel for DuPont, declined to say that Sylvania was guiding and controlling the defense, but admitted that counsel representing the defendant was employed by Sylvania; and in answer to questions from counsel for DuPont, the President of the Waxed Products Company testified that the attorneys employed by Sylvania were in charge of the defense. Under these circumstances the District Judge made the following statement in his opinion (DuPont Cellophane Co. v. Waxed Products Co., 6 F. Supp. 859, 862): "It is admitted by the defendant that attorneys selected and paid by Sylvania Industrial Corporation, and not by defendant, are defending and guiding this suit." Upon the same question, the District Judge in the pending case made the following finding in his memorandum opinion: "The defendant in the prior suit was the seller of cellophane made by the defendant in this suit, and the defendant in this suit selected and paid the attorneys who defended and guided that suit to the knowledge of the plaintiff."

It is not open to doubt that the DuPont Company in the prior case sought an adjudication that it possessed a valid trademark in the word "cellophane", or that the suit was defended on the ground, amongst others, that the word, if ever a valid trade mark, had become a generic name descriptive of the product. The District Court rejected this defense and held that "cellophane" was a valid trade-mark which DuPont owned and was alone entitled to use. The court said (6 F.Supp. 884): "The name 'Cellophane' characterizes a single thing coming from a single source, and is a valid trade-mark, even if it should be shown that the product is more emphasized than the producer, or that the identity of the producer was unknown." Accordingly, the court issued a decree which provided:

"1. That the name cellophane is a valid trade-mark.

"2. That plaintiff is the owner of and alone entitled to use the trade-mark cellophane, and that its goods alone can lawfully be sold under that name.

"3. That defendant has infringed the exclusive rights of the plaintiff by supplying and passing off in response to requests for cellophane transparent film not manufactured by plaintiff."

The decree also provided that a writ of injunction should issue against Waxed Products Company from using the word "cellophane" in connection with any product not made by DuPont, and from filling orders for cellophane with any such product without explaining to the purchaser that the goods were not DuPont's.

On appeal this finding as to the character of the word was reversed. The Circuit Court of Appeals said (85 F.2d 77):

"The court below made a finding that the name 'characterizes a single thing coming from a single source, and is a valid trademark, even if it should be shown that the product is more emphasized than the producer or that the identity of the producer is unknown.' This finding seems to us not only not warranted by the evidence but clearly disproved. * * *

"It would have served as a useful trademark, at least in the beginning, if it had not almost immediately lost ground as such because it was employed to describe the article itself. Indeed, no other descriptive word was adopted."

After reviewing the evidence as to the origin of the product, and of the descriptive word in France and its use in France and elsewhere prior to 1923, the court said (85 F.2d 78): "It seems quite evident that the French manufacturers and their agents, as well as the relatively limited public that were interested in using these cellulose films before DuPont entered the field, constantly employed the word 'cellophane' to describe the product and that it was used in a generic sense from the beginning."

The court then reviewed the evidence on the same subject after the acquisition of the French interests by the DuPont Company in 1923, and said (85 F.2d 80):

"The course of conduct of the complainant and its predecessors, and especially complainant's advertising campaign, tended to make cellophane a generic term descriptive of the product rather than of its origin and, in our opinion, made it so to at least a very large part of the trade. * *

"The evidence we have summarized demonstrates that 'cellophane' is used to designate the cellulose product we are concerned with, far more commonly than any other term, and is certainly the descriptive word in general use."

Summarizing the whole question as to the signification of the word "cellophane", the court said (85 F.2d 82) : "In the present case the word 'cellophane' ordinarily signifies the cellulose product we have been discussing and nothing more, but to certain persons it is probable that it means the complainant's goods."

The court then held that the decree of the District Court should be modified so as to conform to the following statement (85 F.2d 82) : "The defendant should be allowed to use the word cellophane unconditionally in dealing with those to whom it means no more than the product and should be able to fill orders for cellophane received from such persons either with Sylvania cellophane or any other cellophane. But as the complainant's use of the word 'cellophane' has had a wide publicity, there may be some persons who desire DuPont cellophane. Accordingly, it seems to us in the interest of justice that, when filling orders for cellophane, the defendant should state that the product sold is Sylvania cellophane or the cellophane of whomsoever may be the maker, and need state nothing more. The defendant may likewise use the word cellophane in its advertisements provided it shall prefix the maker's name as a possessive."

Notwithstanding this decision, DuPont submitted a proposed decree in which the District Court was asked to hold that cellophane is a valid trade-mark which DuPont owns and alone is entitled to use; but in view of the opinion of the appellate court, the District Court refused, and decreed as follows: "1. That the word cellophane ordinarily signifies the cellulose product involved in this suit and nothing more, and is the descriptive word in general use to designate such product, although to certain persons it probably means the plaintiff's product."

The decree also provided that the defendant be enjoined from selling, in response to requests for cellophane, any product except that of DuPont, without clearly stating the name of the manufacturer. A second appeal followed in which it was assigned as error, amongst other things, that the trial court had decreed that cellophane ordinarily signifies the cellulose product and nothing more, and had declined to decree that "cellophane" is a valid trademark. This decree was affirmed without opinion on February 23, 1938.

This recital seems to show very clearly what was decided in the New York case. Nevertheless, DuPont contends that a careful study of the reasoning of the Circuit Court of Appeals will show that it was not necessary for the court to pass upon the validity of "cellophane" as a trade-mark, and that its invalidity was not actually adjudicated. The argument rests upon certain statements in the opinion of the appellate court from which the inference is drawn that in the view of the court the controversy involved the passing off of Sylvania's goods for the goods of DuPont, and not the infringement of the latter's trade mark. The court referred to the fact that the Waxed Products Company, having been warned by Sylvania, billed and labelled the goods which it sold as "cellulose", and did not use the name "cellophane" except that when it received orders for cellophane, it filled them with its own goods. The court said (85 F.2d page 76) that the case did not turn on the question whether cellophane was at one time more than a descriptive term, but upon what it meant to the public during the period covered by the suit, and that the rights of DuPont were based on the wrong done by the defendant, if any, in misleading customers as to the origin of the goods. In this connection the court said (85 F.2d 81) : "The District Court erred in concluding that 'the trade-mark cellophane does not depend upon what was in the customer's mind' and in deciding the case on the theory that the public understanding as to the meaning of the word was immaterial. Such a theory is out of accord with the essence of the law of trade-marks. The rights of the complainant must be based upon a wrong which the defendant has done to it by misleading customers as to the origin of the goods sold and thus taking away its trade. Such rights are not founded on a bare title to a word or symbol but on a cause of action to prevent deception. It, therefore, makes no difference what efforts or money the DuPont Company expended in order to persuade the public that 'cellophane' means an article of DuPont manufacture. So far as it did not succeed in actually converting the world to its gospel it can have no relief."

Finally, as we have seen, the court concluded that the word "cellophane" ordinarily signifies a sort of cellulose product, but probably means to certain persons the

goods of DuPont; and hence the court, without reversing the decree below completely, modified it by limiting the injunction in accordance with its opinion, and by limiting the accounting to such sales as the plaintiff might prove had been made by the defendant to persons who expected DuPont cellophane and got that of other producers.

Our examination of these proceedings convinces us that the court did pass upon the validity of the trade-mark, and that it was not the intention of the court to restrict the final decree to the holding that Sylvania's goods were passed off and sold as the goods of DuPont. It is true that the opinion suggests that something of this sort was probably involved in the defendant's practice of filling orders for cellophane with Sylvania's product. But such a practice itself may amount to trade-mark infringement, as well as unfair competition. See the authorities cited in the opinion of the District Court, 6 F.Supp. 885; Restatement of Torts, § 727, Comment B. There was in fact no proof that any one had actually been misled by the defendant's acts, and DuPont subsequently produced no such proof, although given the opportunity to do so by the accounting feature of the decree. DuPont was primarily interested in the establishment of the validity of its trade-mark. It sought, and in the first instance, obtained a favorable decree in this respect; and this ruling did not stand only because the appellate court found as a fact that the word, whatever may have been its original significance had become descriptve in character and incapable of exclusive appropriation. This finding, substantially reproduced in the final decree, was an adjudication that destroyed the validity of the trade-mark; and that the decree was so understood by DuPont is shown by its assignment of errors in the second appeal. See Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195.

The provision in the final decree that the defendant should not use the term "cellophane" in connection with its goods without stating the manufacturer's name does not conflict with this view. The probability that to some persons the term means a DuPont product grew out of DuPont's long association with the goods and its ownership of expired patents upon the process of manufacture. The requirement that the name of the maker be affixed to the goods was far from indicating that the term "cellophane" was the sole property of DuPont. On the contrary, it was designed to permit the use of the term by competitors of DuPont in such a way as not to confuse the buying public. A similar restriction has been made in other cases with regard to the use of a term, once exclusively owned by a single individual, that had become public property. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 203, 204, 16 S.Ct. 1002, 41 L.Ed. 118; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73. See, also, Restatement of Torts, §§ 735 (1) and (2).

DuPont contends, in the second place, that even if there has been an adverse adjudication upon the validity of the trade mark, nevertheless the issue may be now litigated again under the rule laid down in Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949, because Sylvania was not a party to the earlier case and was not bound by its decree. It is pointed out that Sylvania refused to intervene when offered the opportunity to do so upon condition that it agree to be bound in all respects by the final decree. But this circumstance is not decisive, although it should be taken into account in determining the extent of Sylvania's participation in the trial. The evidence shows that while Sylvania did not become a party to the record, its interest in the case remained unabated and it actually controlled the litigation as fully as it could have done, if it had intervened. Its manifest interest in the use by the trade of the term "cellophane" to designate the goods, and its actual and avowed participation in the trial, fully justified the conclusion reached by the District Judge in each case, that Sylvania defended and guided the earlier suit to the knowledge of the plaintiff.

The binding force of the judgment of a court upon a person not named as a party to the suit, but actually in control thereof to the knowledge of the other side, has been frequently described in the decisions of the federal courts. The underlying principle is succinctly stated in Souffront v. Compagnie Des Sucreries, 217 U.S. 475, 486, 487, 30 S.Ct. 608, 612, 54 L.Ed. 846, as follows: "The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted, cannot, in a legal sense, be said to be strangers to the cause. The

case is within the principle that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, and as fully entitled to avail himself of it, as an estoppel against an adverse party, as he would be if he had been a party to the record. Lovejoy v. Murray, 3 Wall. 1, 18 L.Ed. 129."

■ The Circuit Courts of Appeals have applied this principle, especially in cases in which the manufacturer of an article alleged to infringe a patent has undertaken to defend a customer when sued for infringement. It has been quite generally held that while mere assistance in the defense of a case is insufficient to bind a person not joined as a party, participation in the trial and control of the litigation, openly avowed by the participant or at least known to the other side, will bind the participant as fully as if he had been a party to the record. The rule is sound and just since it recognizes the real parties to the suit, and applies the established principles of mutuality and finality that characterize the estoppel of a judgment. See, Elliott Co. v. Roto Co., 2 Cir., 242 F. 941; Hanks Dental Ass'n v. International Tooth Crown Co., 2 Cir., 122 F. 74; Bemis Car Box Co. v. J. G. Brill Co., 3 Cir., 200 F. 749; Jefferson Elec. Lt., Heat & Power Co. v. Westinghouse Elec. & Mfg. Co., 3 Cir., 139 F. 385; White v. Croker, 5 Cir., 13 F.2d 321, 324; Beyer Co. v. Fleischmann Co., 6 Cir., 15 F.2d 465; Foote v. Parsons, 6 Cir., 196 F. 951; Doherty Research Co. v. Universal Oil Products Co., 7 Cir., 107 F.2d 548, 550; General Electric Co. v. Morgan-Gardner E. Co., 7 Cir., 168 F. 52; Cushman v. Warren-Scharf Asphalt Paving Co., 7 Cir., 220 F. 857; Phoenix Finance Corp. v. Iowa-Wisconsin B. Co., 8 Cir., 115 F.2d 1; City of

Mankato v. Barber Asphalt Paving Co., 8 Cir., 142 F. 329; Hy-Lo Unit & Metal Products Co. v. Remote C. Mfg. Co., 9 Cir., 83 F.2d 345; Carson Inv. Co. v. Anaconda Copper Mining Co., 9 Cir., 26 F.2d 651, 657; Rumford Chem. Works v. Hygienic Chem. Co., 215 U.S. 156, 157, 30 S.Ct. 45, 54 L.Ed. 137; Litchfield v. Goodnow (Litchfield v. Crane), 123 U.S. 549, 550, 8 S.Ct. 210, 31 L.Ed. 199; Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas. 1913E, 875.

■ The contention is made that the principle of these cases has no application here because Sylvania had no legally recognizable interest of its own that justified its participation in and control of the prior suit. It is said that Sylvania had no complicity in the passing off with which its customer was charged, and no liability to it as an indemnitor. But if the actualities are regarded, it is seen that little practical difference existed between the situation of Sylvania and that of the manufacturers who defended many of the patent cases referred to. Sylvania's goods did not of themselves violate the alleged trade-mark, but in the hands of its customers they were being put to a use that amounted to infringement of the trade-mark, if it possessed validity. Moreover, Sylvania itself made like use of the mark after the final decree in the Waxed Products case, and it was of much greater importance to it than to its customers to establish the legality of its behavior. These were the considerations known to every one in the suit that led Sylvania to identify itself with the defense. We think that its interest in the suit was sufficient to bind it if the decision had been adverse, and that it is now entitled to the protection of the favorable decree. Compare General Chemical Co. v. Standard Wholesale P. & A. Works, 4 Cir., 101 F.2d 178.

The judgment of the District Court is affirmed.